## CARLYLE et al. *vs.* PLUMER et al.

### APPEAL FROM CIRCUIT COURT, BAD AX COUNTY.

Heard January 24, 1860.]                    [Decided May 4, 1860.

### *Evidence—Deposition.*

Where a witness had testified to having heard parties frequently talk about entering into copartnership, such witness may be asked what was said between the parties about the partnership, and such question will not be considered leading, as it does not suggest the answer.

It is not competent for one co-partner to prove the admissions or acts of his co-partner, to show that a co-partnership does not exist, when the question of partnership is at issue between them and third parties.

Parties are not entitled in their own favor to prove what they or their co-parties may have stated in relation to the matter at issue.

A commission to take testimony in a foreign state may be issued by consent of parties, without naming the commissioner, and the person taking the testimony may fill up the commission.

A witness may write his answers to the questions in a deposition himself, as well when the deposition is taken under a commission, as under the statute.

This action was commenced by Adam Carlyle and Thomas Dowse, against Washington Plumer, Francis Plumer, and John H. Brown, upon a promissory note for $331 67, also for goods, wares, &c., $48, for rent of a storehouse, $87 50, and for rent of an office, $13. The complaint is in the usual form, charging the partnership of the defendants and plaintiffs. Francis Plumer alone answered, denying the partnership of the defendants, in any business whatever; and therefore he denied all the allegations of the complaint against him. On the trial of this issue, the plaintiffs intro-

Carlyle et al. vs. Plumer et al.

duced and read from the Viroqua "Western Times," a "Notice of Copartnership," as follows:

"The undersigned have this day formed a co-partnership, to be known under the name and style of W. Plumer & Co., for the purpose of manufacturing lime, &c.

"De Soto, August 16, 1856.        W. PLUMER,
                                  F. PLUMER,
                                  J. H. BROWN."

The plaintiffs then introduced a witness, Woodbury, who, after testifying to his acquaintance with the Plumers, proceeded:

"I have heard frequent conversations between Washington and Francis Plumer. I remember one conversation that took place outside of Carlyle & Dowse's store, on a salt barrel.

"*Ques.*—What was said about a copartnership between the two parties? Objected to by the counsel of Francis Plumer, as leading. Objection overruled by the court, and the defendant excepted.

"*Ans.*—Francis said he would furnish him money to buy out Collins, Maddox & Greely. I heard another conversation between them at the dissolution of the old firm. I saw the articles of dissolution in manuscript. I wrote the article.

"I was present at a room in the third story of the store of Carlyle & Dowse, when this notice was written, referring to the notice of copartnership between Washington and Francis Plumer and John H. Brown, published in the "Western Times;" it was in a bed room. I drew it up at the request of Washington and Francis Plumer. No one went up into the room but myself and Francis and Washington Plumer. I heard them say that Francis Plumer was to become a partner after the dissolution of the old firm. Francis said he would furnish money to buy out Collins, Maddox & Greely. I went up, at the request of Washington and Francis Plumer, to write a notice. Francis was to become a partner after the dissolution of the firm of which Collins, Maddox & Greely were the partners. He thought he ought to make three thousand dollars. He told me previously to let Washington have one thousand dollars. He told him to draw on him when he got home, and at Washington's request I drew drafts on him, which were paid. Francis said he should go home and sell his farm; that Washington was to be financial manager, Francis to manage the barrel factory, Brown the lime-kiln.

Carlyle et al. vs. Plumer et al.

Francis was going home to dispose of his farm, and coming back that fall. I wrote the notice of the dissolution of the old firm, and wrote the notice for the new firm, as published. I folded the new notice with the old. It was signed by Washington Plumer, but not by Francis. Washington Plumer signed the names of all three to it. Washington handed the pen to Francis Plumer, and Francis said, you sign my name to it. Francis saw the notice and signatures. I sent them to the printer, at the request of both Washington and Francis, to be put into the paper, at Viroqua. I had conversation with Francis every day, a good deal.

" *Ques.*—Is this notice of dissolution a copy of the one written by you at the same time you wrote the notice of the new firm, and was it enclosed at the same time with the other? Objected to by the counsel of Francis Plumer, and overruled.

" *Ans.*—It is a copy of the same. I saw Francis on the 20th of April last, at De Soto, at the door of the barrel factory. He said Washington had run the concern into debt, and that he should back out; that he did not like the management. I had conversation with him two times.

" *Cross Examination.*—He was here a month the first time. I don't know that he went any where but at De Soto. I can't say whether he came in June or July; but I recollect that he was here in July, 1856. This was the first time Francis Plumer was ever at De Soto, to my knowledge. At this time there was a firm in De Soto in which Washington Plumer was a partner, doing business under the style of W. Plumer & Co. It was composed of Washington Plumer, George Collins, G. L. Maddox, James Greely, and John H. Brown. I had been at De Soto one month when Francis came. This firm were carrying on business there together. I never saw all five of those persons together.

The defendants asked the witness the following questions, which were objected to and ruled out:

" *Ques.* Do you know that Francis Plumer loaned Washington Plumer $1,500, on or about the the 16th day of August, A. D. 1856, to be used by Washington in his business, from Washington Plumer's admissions?

" *Ques.* Did Washington Plumer tell you that Francis let him have some money to carry on his business?"

Another witness testified that Francis Plumer came to De Soto in the spring of 1857, and worked and superintended the business, &c.

The testimony of William Cromwell, taken by Abner Oakes, commissioner, under a commission issued out of and under the seal of the circuit court for the county of Bad Ax, which commission is tested Nov. 9, 1857, was offered in evidence. It is admitted by the plaintiffs that the name of the commissioner was not inserted in the commission until after it was sent to the commissioner, and that then it was inserted by the commissioner himself. It was also admitted by the defendants' attorney, that the commission was so issued in blank by his consent, and that the name was to be inserted when ascertained.

The counsel for Francis Plumer objected to the testimony of the witness, taken by virtue of said commission, being used in evidence to the jury, on the following grounds:

1. The commissioner is not named in the rule for the commission, and the name of the commissioner was not inserted in the commission until after it was sent to the state of Maine, and was then done by the commissioner himself. 2. The commissioner's return is insufficient. It does not state nor show that the witness, Cromwell, was duly sworn before giving his evidence. 3. That the clerk of the court never gave any notice to the attorney for the defendant, Francis Plumer, that the commission was returned to his office executed. 4. The testimony of the witness, Cromwell, was not reduced to writing by the commissioner, but was written down by the witness himself, as it appears from the execution of the commission. 5. It does not appear from the return of the commission that all the cross interrogatories are answered. But it does appear from the cross interrogatories, and the answers given by the witness, that they are not all answered. 6. The whole of rules 61 and 62 was not sent with the commission.

The court overruled the objections, and the deposition was read.

The plaintiff having rested his case, the defendant, Francis Plumer, offered in evidence three promissory notes, given to him by Washington. One for fifteen hundred dollars, dated August 16th, 1856, payable on demand, to Francis Plumer or order, with annual interest. Another dated De Soto, Wis., Dec. 19, 1856, for five hundred dollars, payable to Francis Plumer or order, in one year from date, with 10 per cent. interest. And another dated De Soto, May 2d, 1857, for one thousand dollars, payable to Francis Plumer or order, one

year from date, with ten per cent. interest. A mortgage given by W. Plumer and wife, to secure the payment of said three notes, bearing date May 2d, 1857, upon certain real estate described in the mortgage. And also to prove that Francis Plumer never put any capital or stock in the business at De Soto, carried on under the name of W. Plumer & Co., but that all the money he advanced to said firm was that mentioned in said notes and mortgage, and to secure which said notes were given. The plaintiffs objected to all this evidence, and the court sustained the objection and excluded the evidence.

The defendant, Francis Plumer, further offered to prove by S. D. Powers, Francis Plumer's agent at De Soto, that Francis Plumer, on or about the 16th day of August, A. D. 1856, repeatedly stated that he was not a partner with Washington Plumer and John H. Brown. The plaintiffs objected to the evidence, and the court sustained the objection.

The counsel for Francis Plumer further offered to prove, that soon after the publishing of said notice in the Western Times, Francis Plumer went to his agent at De Soto and informed him that he had just learned that a notice had been published in the Western Times that he was a partner with Washington Plumer and John H. Brown, but that said notice was published without his knowledge; that he was not a partner with W. Plumer and John H. Brown.

The plaintiffs objected to the proof, and the court sustained the objection.

The defendant, Francis Plumer, by his counsel, asked the court to give the following instructions to the jury:

" 1. In order to constitute a partnership, there must be proof of a community of interest in the profits of the copartnership business, between the persons alleged to be partners; that in that they must all be interested as principals in the profits of the business.

" 2. That unless the jury believe from the evidence that Francis Plumer was interested in the profits of the business of W. Plumer & Co., he was not a partner with Washington Plumer and John H. Brown.

" 3. That the question, whether he was interested in the profits is one that must be proven, and not one that can be presumed without proof.

" 4. A partnership can only be formed by the consent of all the members. That this consent cannot be presumed, but must be proven.

" 5. That a copartnership cannot be dissolved by one member of a firm writing a notice of dissolution and having it published in a newspaper.

" 6. That the admissions of one person that others are his copartners, are only evidence of the fact against himself, and not against the others.

" 7. That it is only in partnerships strictly mercantile that one member of the firm can bind the others by bills of exchange and promissory notes.

" 8. That if the jury believe from the evidence, that the defendant, Francis Plumer, only intended or agreed to become a partner at some future time, but did not in fact become one, he is not liable to the plaintiffs in this action.

The defendant, Francis Plumer, by his counsel, also requested the judge to charge the jury only in writing.

The judge charged the jury in the manner requested by the 1st, 3d, 4th and 6th instructions asked for by the defendant, Francis Plumer.

The judge refused to give the 5th instruction asked for.

The 2d, 7th and 8th instructions asked for, the judge refused to give, except with the qualifications contained in his charge, which was as follows :

"*Gentlemen of the Jury :*—This is a civil action, and the case commenced by the said plaintiffs, as partners, against the said defendants, as partners, doing business under the firm, name and style of W. Plumer & Co., to recover $480 17, alleged to be due for goods sold and delivered, rent, and upon a promissory note. A default has been taken against Washington Plumer and John H. Brown, for want of an answer by them; but the defendant, Francis Plumer, has filed and served the affidavit of S. D. Powers, his agent, denying his having been a partner with the other defendants, and has also served an answer, denying such partnership. If the defendant, Francis Plumer, had not denied by affidavit the existence of the partnership of the defendants, the averment of the partnership of the defendants in the complaint of the plaintiffs would have been sufficient to establish the partnership without further proof; but such partnership having been denied by affidavit, the plaintiffs are put upon the proof of that fact. To that point I will first direct your attention.

" A partnership is where two or more persons associate together by agreement to carry on business for their joint benefit—each party bringing into the common stock something

that is valuable, and engaging to share the profits and losses of the business. If one person advances funds, and another furnishes his personal services or skill in carrying on a trade, and each is to share the profits, it amounts to a partnership.

"But, to constitute a person a partner, he must be a party to the agreement, and cannot be made such without his consent. However, if a person holds himself out to the world as a partner, so as to induce others to give credit on that assurance, that will render him responsible as a partner, as he is estopped from taking advantage of his own wrong.

"If you find from the evidence that the defendant, Francis Plumer, caused to be published in a newspaper of general circulation, a notice that he had formed a partnership with W. Plumer and John H. Brown, under the name and style of "W. Plumer & Co.," I instruct you that it will render Francis Plumer liable as a partner of such firm from the time of such publication until notice of dissolution.

"If you are satisfied by the evidence that the partnership of the defendants existed as alleged in the plaintiffs' complaint, you will next consider the question of damages.

"As a general rule, a contract made by one partner, in the name of the firm, will bind the firm, if the subject matter of the contract is consistent with the partnership business, and within the scope of the partnership. If you find, from the evidence, that the defendant, as such partner, carried on the business of the manufacture and sale of barrels and lime; that one of the partners, in the name of such firm, purchased of the plaintiffs flour, flour-sacks, flour-barrels, lumber, boards, timber, and other goods, amounting in value to $48; also, rented of plaintiffs a business office and ware-house for the storage of lime and barrels; and also executed and delivered to plaintiffs the promissory note mentioned in the plaintiff's complaint, I instruct you that the presumption in law is, that such contracts were within the scope of the partnership business, and were a partnership transaction, and that the defendants are required to show to the contrary.

"The plaintiffs have offered in evidence a promissory note, which I instruct you is prima facie evidence of the contents thereof, in pursuance of the provisions of the statute. The defendants not having controverted the allegations of the complaint that 'W. Plumer & Co.' purchased the goods and wares, and rented the office and ware-house of plaintiffs, such allegations will be taken as true for the purposes of this

action, if you find from the evidence that Francis Plumer was a partner in the firm of ' W. Plumer & Co.' "

The defendant properly excepted, and the verdict was for the plaintiff, for $464 87. Judgment was rendered thereon, and the defendant appealed to the supreme court.

*J. R. Bennett,* for the appellant, upon the objection to the asking the question to the plaintiffs, " What was said about a partnership between the two parties?" was leading, and therefore improper, cited the following authorities: *People vs. Mather,* 4 Wend., 229; *Courteen vs. Touse,* 1 Campb., 43; *Parkin vs. Moon,* 7 C. & P., 408; *Snyder vs. Snyder,* 6 Binn., 483; 4 Vol., Part 2, Cowen & Hill's Notes, page 719.

Upon the objection to the introduction of the deposition in evidence, he relied upon the following rules of court:

RULE 61.—Either one of the commissioners may execute the commission, notwithstanding the other does not attend upon the taking the testimony. But if the commission is receceived by one of the commissioners, he shall give notice thereof to the others, and also of the time and place of the execution thereof, if it be practicable. If but one commissioner attend upon the execution of the commission, he shall so certify on the papers accompanying the return he may make to the execution thereof, and also that he gave notice to his colleague as aforesaid, or that he was unable to give such notice, and the cause thereof. Every interrogatory, direct and cross, shall be propounded to each witness, and his answers thereto shall be taken and returned with the commission. Each witness shall subscribe his name at the end of his answers to the interrogatories, and the commissioners shall subscribe their names at the foot of each page of the testimony, and shall certify in their return that the witnesses were duly sworn or affirmed before the giving their evidence. The return shall also state the time when the testimony was taken.

RULE 62.—The commissioner executing a commission may transmit the same after it is executed, directed officially to the clerk of the court out of which it issued, and enclosed in an envelope, properly sealed and secured, or it may be transmitted, enveloped, sealed and directed as aforesaid, by any trusty person having no interest in the suit in which the evidence is taken, to be delivered to said clerk.

*J. J. Cole,* for the respondents.

*By the Court*, PAINE, J.  This suit was brought to recover on a note, and for goods sold, and for rent, all of which were due from Washington Plumer & Co.  The only contest was with the defendant, Francis Plumer, who denied that he was a member of the partnership.  The verdict and judgment were for the plaintiff, and Francis Plumer appealed.

We will proceed to notice the several exceptions relied on in the brief of the appellant's counsel.

The first is, that the court below erred in permitting the plaintiff's counsel to ask one of his witnesses a leading question.  The witness, Woodbury, testified that he had heard frequent conversations between Washington and Francis Plumer, and specified one which occurred outside of Carlyle & Dowse's store, on a salt barrel.  The question was then asked: "What was said about a copartnership between the parties?"  This was objected to as leading, but admitted by the court, and we think it was properly admitted.  The question cannot be said to be a leading question.  It does not suggest the answer.  It is not capable of being answered by a simple affirmative or negative.  It only calls the attention of the witness to the particular subject, and then asks what was said in regard to it.  There might be circumstances where a court, in the exercise of its sound discretion in regard to the form in which questions may be put, should exclude a question even alluding so generally to the subject matter of the conversation.  But we see nothing of the kind in this case.  And on the contrary, the question seems to be only of that kind which are permissible, " to abridge the proceedings, and bring the witness, as soon as possible, to the material points on which he is to speak;" 1 Greenleaf's Ev., § 434; even if the permitting a leading question to be asked can be made a sufficient reason for reversing a judgment in any case; we therefore do not think the question here asked was liable to that objection.

The next exception urged is to the refusal of the court to allow the defendant's counsel, on cross-examining the witness, to prove Washington Plumer's admissions. He was clearly entitled to the entire conversation, as to which the witness had testified in chief. But this was not what the defendant enquired for. On the contrary, he asks for Washington Plumer's admissions generally, without limiting the inquiry to any conversation which the plaintiff had called out. The judge was clearly right in excluding the evidence. Parties are not entitled to prove in their own favor, whatever they or their co-defendants may state.

The next exception is to the admission of the deposition of William Cromwell. One ground of objection is, that the commissioner was not named in the rule, or in the commission, when issued, but that his name was afterwards inserted. It appears from the record, that the defendant's attorney admitted on the trial that " the commission was so issued in blank by his consent, and that the name was to be inserted when ascertained." That being so, he could not be heard to object, for that reason. But the counsel urges that this consent that the commission issue in blank, cannot be construed into a consent that the rule for a commission be entered without naming the commissioner. But, surely, a party consenting that the commission might issue in blank, and joining in it, by filing cross-interrogatories, must be deemed to consent that the rule may be accordingly. For to insist that the commissioner should be named in the rule, would be repugnant to his consent, and make it of no avail. If the other party knew the name of the commissioner to insert in the rule, he could of course insert it in the commission. A consent of this kind should be construed by the court, as the other party had a fair right to construe it. And we think in this case, they had a fair right to construe it as a waiver of the commissioner's name in the commission,

and in every thing incidental to it, until it could be ascertained.

It was also objected that the answers of the witness were reduced to writing by himself, instead of the commissioner. We do not think this any ground of objection. Certainly, a witness can write his own answers, as well as any one can write them for him. And it would seem in fact to be the most certain and accurate way of obtaining his actual words.

We think, also, that the fact that the clerk did not give notice to the parties that the commission was returned, executed as directed by rule 62, does not render the deposition inadmissible. This is a direction which the clerk of course should have complied with, but his neglect to do so ought not to deprive the parties of their substantial rights, which might be entirely dependent upon the admissibility of the evidence.

In short, the objections taken to this deposition seem to us of an entirely unsubstantial character. And that it was not the intent of the law that substantial rights should be sacrificed to unsubstantial objections, is evident from the fact that sec. 28 of chap. 98, R. S., 1849, provides that depositions taken out of the state, in any other manner than that already prescribed, might be admitted at the discretion of the court, if the opposite party should appear to have had proper opportunity for cross examination.

The defendant also offered in evidence certain notes and a mortgage executed by Washington Plumer to him, which he claimed to have been given as security for all the moneys he had advanced, and also offered to prove his own declarations that he was not a partner. Upon the latter part of the offer it is unnecessary to say anything, and we do not think the notes and mortgage tended to show that there was no partnership.

But it is said the court erred in holding that the averment of partnership in the plaintiff's complaint was sufficient to prove the fact, unless " denied by the affidavit of the defend-

ant." The court said it *would* have been sufficient if it had not been denied, but then told the jury expressly, that it was denied, and that the burden of proof was on the plaintiff to establish the partnership by evidence. This was all the defendant could ask. And what the court said about what *would* have been the effect of the averment in the complaint, under a different state of facts, was entirely immaterial, and could have no tendency to mislead the jury,-even if incorrect.

We can discover no error, and the judgment is affirmed, with costs.

